**MIDWEST GUARDIAN, INC., et al., Appellants,**

**v.**

**COOK et al., Appellees.**

[Cite as *Midwest Guardian, Inc. v. Cook* (1992), 82 Ohio App.3d 715.]

Court of Appeals of Ohio,
Allen County.

No. 1–92–7.

Decided Oct. 15, 1992.

*Douglas S. Roberts,* for appellants.

*Thomas P. Kemp,* for appellees.

EVANS, Judge.

This is an appeal from a judgment of the Court of Common Pleas of Allen County, finding that all defendants were entitled to summary judgment on the complaint and dismissing the plaintiffs' case on the merits.

The plaintiffs in this case are Donald E. Miller ("Don") and his wife, Mona L. Miller ("Mona") together with an Ohio corporation, Midwest Guardian, Inc. ("Midwest"), which the Millers incorporated for the purpose of starting a new business. The defendants are Richard G. Cook ("Richard") and his wife Maureen A. Cook and Kenneth L. Williams ("Ken") and his wife Kathleen M. Williams. Richard and Ken were both certified public accountants and were partners in the same accounting firm. Richard was the principal accountant for Pyropak, a corporate client of the accounting firm. Ken was the principal accountant for Don and Mona Miller.

The plaintiffs' claim in this case is for fraud, and is set forth "with particularity," as required by Civ.R. 9(B), in the fourth paragraph of the plaintiffs' amended complaint:

"4. On or about July 17, 1984, plaintiffs, Donald E. Miller and Mona L. Miller, incorporated Midwest Guardian. At that time, plaintiffs needed additional capital to finance the startup of the new company, and they mentioned this fact to their accountants, Defendants, Richard H. Cook and Kenneth L. Williams, of Cook, Williams & Company. Defendants told plaintiffs that they could obtain financing for them through one of their clients, Pyropak, a

corporation then owned by Eldon and Adrian Haberkamp. In connection with such financing, however, defendants told plaintiffs that Pyropak insisted, as a condition precedent to making the loan, that plaintiffs convey to defendants twenty-five percent of the stock of Midwest Guardian. According to defendants, such ownership interest was necessary to allow defendants to 'properly supervise' the startup and operation of the new company. Accordingly, as a result of this representation, plaintiffs did, in fact, convey twenty-five percent of the stock of Midwest Guardian to defendants. As a further result of such stock ownership, defendants demanded that plaintiffs pay to them additional monies for fictitious 'consulting' services. Over the course of the next five years, defendants collected additional amounts of money from plaintiffs through stock dividends, director fees, and the performance of alleged accounting services for the company. In July of 1989, plaintiffs repurchased the stock from defendants for $80,000."

Pyropak purchased equipment from suppliers selected by the Millers and then leased this equipment to Midwest for a term of five years, with Midwest holding an option to purchase at the end of the lease term. At approximately the same time, the Millers had their attorney prepare a preincorporation agreement for the formation of Midwest. This agreement provided that Ken or his wife would subscribe for twelve and one-half percent of the shares; Richard or his wife would subscribe for twelve and one-half percent of the shares; Don would subscribe for twenty-four percent of the shares, and Mona would subscribe for the remaining fifty-one percent of the shares. The agreement further provided that Richard and Ken would be elected as directors of the corporation, that their accounting firm would do the accounting and tax work for the corporation and that Richard and Ken would receive the sum of $15,000 each year for their services as consultants for the corporation. The agreement also contained provisions that were designed to prevent any of the agreements pertaining to offices and compensation for Ken and Richard from being changed for the first five years of the corporate existence.

It appears that the trial court was able to avoid recognition of the fraud issue by deciding that the plaintiffs had no cause of action as a matter of law. In analyzing the case the trial court determined that Ron and Mona had no cause of action because "[a]ssuming arguendo that a fraud occurred and was perpetrated by the defendants, the cause of action belongs to the corporation not the individual shareholders." The trial court also determined that Midwest had no cause of action because "[t]he undisputed facts show that defendants never brokered a loan for Midwest or obtained 25% of the corporate stock for brokering such a loan. The evidence establishes that defendants did assist in developing the equipment lease. This lease speaks

for itself and while construed by some as a 'loan' does not constitute a 'loan' which indebted Midwest for anything it did not receive, *i.e.,* equipment. The defendant's [*sic*] own evidence establishes that no injury resulted to the corporation by virtue of the equipment lease.

"Notwithstanding whether the equipment lease constitutes a loan, neither Midwest nor Millers ever transferred any stock to defendants to obtain the lease. The only stock ever held by defendants occurred when Midwest was capitalized for $5000.00 pursuant to the pre-incorporation agreement. This agreement pre-dated the equipment lease by several days and is acknowledged in paragraph 10 of the equipment lease which states:

" 'Disclosure

" '10. Lessor acknowledges that Lessee has indicated that it is in the process of becoming a close corporation under a Pre–Incorporation Agreement dated June 28, 1984, [sic] and Lessor acknowledges that the sole obligated party under this lease is said corporation, being Midwest Guardian, Inc., to the exclusion of any shareholders, officers or employees thereof.'

"Since this disclosure clearly references the Pre–Incorporation Agreement both Midwest and Pyropak were aware of the subscription provisions of paragraph 2 of the agreement. There is no evidence that paragraph 2 of the Pre–Incorporation Agreement is a result of a false representation to Midwest to enable Midwest to negotiate the equipment lease."

Further insight into the decision of the trial court can be gained from the following statements contained in the memorandum decision:

"The evidence is clear that the very first formal act of any of the participants was the pre-incorporation agreement dated June 14, 1984. There is no evidence that the pre-incorporation agreement evolved from fraudulent representations."

Appellants have appealed both of these decisions by the trial court and assign the following as error:

"The trial court erred when it granted summary judgment against plaintiffs, Donald E. Miller and Mona L. Miller, on Count I (fraud) of the amended complaint.

"The trial court erred when it granted summary judgment against plaintiff, Midwest Guardian, Inc. on Count I (fraud) of the amended complaint."

For the reasons which follow, we sustain both assignments of error.

■ The trial court granted summary judgment against the Millers on the theory that they had brought this action in their capacity as shareholders of Midwest. We find nothing in the amended complaint which justifies this

conclusion. It is true that Don and Mona allege that they are the controlling stockholders, officers, and directors of Midwest Guardian, but this allegation appears to be an informational statement designed to explain the relationship between Don, Mona and Midwest. There is no allegation that Don and Mona are bringing this action in their capacity as shareholders of Midwest. A fair reading of the amended complaint indicates that the Millers are bringing this action as individuals and not as shareholders of the corporation.

The trial court granted summary judgment against Midwest because the evidence did not establish that the corporation had been harmed in any way by virtue of the equipment lease, nor was there any evidence that the Millers or Midwest ever transferred any shares of the corporation to obtain the lease. However, a correct analysis of this case must begin with the activities of the defendants when Don and Mona were still trying to find financing for their new business. If Ken and Richard made the representations about the Pyropak financing as Don and Mona contend, the fraud was complete at that point. Everything that happened after that representation was made to the Millers was the product of the alleged fraud. The trial court reached its decision in this case by regarding the Millers and Midwest as separate entities, and then considering the facts from the posture of each of them. The Millers were rejected as plaintiffs because the trial court concluded that they brought their action as shareholders of Midwest. Then Midwest was rejected as a plaintiff because no false representation was ever made to the corporation.

We find that the trial court erred in analyzing this case from the standpoint of the Millers and then considering the case from the standpoint of Midwest. This dissection leads to a distortion of the case, which is illustrated by the trial court's finding that both Midwest and Pyropak were aware of the share subscriptions contained in the preincorporation agreement, and that there was no evidence that these subscriptions were the result of a false representation made *to Midwest* as a condition to negotiation of the equipment lease. If there is fraud in this case it had already been committed by the time Midwest was formed. Relying on the fact that no fraudulent representation was ever made to the corporate entity only serves to sidestep the fraud issue.

Thus, we conclude that the corporate entity must be ignored in this case and the facts considered as if the Millers and Midwest were one entity for the purpose of determining the existence of a cause of action in this matter. As succinctly stated in 11 Ohio Jurisprudence 3d (1979) 326, Business Relationships, Section 93:

"It is well established that the fiction of the corporate entity was introduced for convenience of the corporation in the transaction of its business, and of

those who do business with it. But the principle of the separate corporate entity is subject, as all other fictions are, to the rule that equity will look through the form of things to their substance where the ends of justice cannot be served in any other way."

In conclusion, we sustain the first assignment of error because the pleadings do not support the decision of the trial court that the Millers brought their claim as shareholders of Midwest. We sustain the second assignment of error because the trial court should have applied its equity powers to look through the corporate entity and find a claim of fraud made by the Millers. There is a disputed fact in this case and, without doubt, it is material.[1] Summary judgment was improper.

Having found error prejudicial to appellants herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the case to the trial court for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

HADLEY, P.J., and SHAW, J., concur.

---

1. The plaintiffs, Don and Mona, contend that the defendants, Ken and Richard, represented to them that the lender, Pyropak, required as a condition precedent to the lending of any money that Ken and Richard must hold twenty-five percent of the shares of the new corporation so they would be in a position to supervise the organization and operation of the new business. Ken and Richard deny this allegation. Thus, there is a dispute as to a fact material to a cognizable claim of fraud.